**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CARL REED,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD ZULEY, TIMOTHY THOMPSON, the CITY OF CHICAGO, NANCY GALASSINI ADDUCI, and COOK COUNTY,<br><br>Defendants. | Case No. 1:23-cv-17186<br><br>Judge John F. Kness<br><br>Magistrate Heather K. McShain |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NANCY GALASSINI ADDUCI'S MOTION FOR SUMMARY JUDGMENT**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CARL REED,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD ZULEY, TIMOTHY THOMPSON, the CITY OF CHICAGO, NANCY GALASSINI ADDUCI, and COOK COUNTY,<br><br>Defendants. | Case No. 1:23-cv-17186<br><br>Judge John F. Kness<br><br>Magistrate Heather K. McShain |

## TABLE OF CONTENTS


| | | Page: |
|---|---|---|
| INTRODUCTION | | 1 |
| STATEMENT OF FACTS | | 2 |
| STANDARD OF REVIEW | | 9 |
| ARGUMENT | | 10 |
| A. | ASA Adduci is Entitled to Absolute Prosecutorial Immunity | 10 |
| B. | ASA Adduci is Entitled to Qualified Immunity on the Plaintiff's Federal Claims | 12 |
| | 1. The Evidence Fails to Demonstrate That Adduci's Conduct Violated Plaintiff's Constitutional Rights by Coercing Him into Making a False, Incriminating Statement. | 13 |
| | 2. The Evidence Fails to Demonstrate That Adduci Fabricated False Evidence and Statements, Knowing them to be False. | 14 |
| | 3. The Evidence Fails to Demonstrate that Adduci Withheld Exculpatory Evidence. | 16 |
| | 4. Adduci is Entitled to Summary Judgement on Plaintiff's Claims for Malicious Prosecution. | 16 |
| | 5. Adduci is Entitled to Summary Judgement on Plaintiff's Claim for Failure to Intervene. | 18 |

6. Adduci is Entitled to Summary Judgement on Plaintiff's Civil Conspiracy Claim. 19

C. Adduci is Entitled to Summary Judgment on Plaintiffs' State Law Claim for Intentional Infliction of Emotional Distress (IIED). 20

D. Adduci is Entitled to Summary Judgement on Plaintiff's State Law Claim of Willful and Wanton Conduct/Aggravated Negligence. 21

CONCLUSION 22

Dated: August 24, 2026

Respectfully Submitted,

NANCY GALASSINI ADDUCI

/s/ Michele J. Braun

Kenneth M. Battle
Michele J. Braun
O'CONNOR & BATTLE, L.L.P.
20 N. Clark St., Suite 1600
Chicago, IL 60602
312-422-9400
kbattle@hoblawfirm.com
mbraun@mokblaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CARL REED,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD ZULEY, TIMOTHY THOMPSON, the CITY OF CHICAGO, NANCY GALASSINI ADDUCI, and COOK COUNTY,<br><br>Defendants. | Case No. 1:23-cv-17186<br><br>Judge John F. Kness<br><br>Magistrate Heather K. McShain |

**TABLE OF CASES**


| | Page: |
|---|---|
| *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). | 10 |
| *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). | 10 |
| *Smith v. City of Chicago*, 242 F.3d 737 (7th Cir. 2001). | 10 |
| *Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944 (7th Cir. 2000). | 10 |
| *Springer v. Durflinger*, 518 F.3d 479 (7th Cir. 2008). | 10 |
| *Steen v. Myers*, 486 F.3d 1017 (7th Cir. 2007). | 10 |
| *Smith v. Power*, 346 F.3d 740 (7th Cir. 2003). | 10 |
| *Kitchen v. Burge*, 781 F.Supp.2d 721 (N.D. Ill. 2011). | 12 |
| *Andrews v. Burge*, 660 F.Supp.2d 868 (N.D. Ill. 2009). | 12 |
| *Fields v Wharrie*, 740 F.3d 1107 (7th Cir. 2014). | 13, 15 |
| *Pearson v Callahan*, 555 U.S. 223 (2009). | 13 |
| *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). | 13 |
| *Whitlock v. Brueggermann*, 682 F.3d 567 (7th Cir. 2012). | 13, 14, 15 |

*Hill v City of Chicago*, 2009 WL 174994 (N.D. Ill. Jan. 26, 2009) 13

*Coleman v. City of Peoria, Illinois,* 92 F.3d 336 (2019). 13, 15, 16

*Petty v City of Chicago*, 754 F.3d 416 (7th Cir. 2014). 15

*Crowder v. Barrett*, 22-1899, 2023 WL 3145312 (7th Cir. Apr. 28, 2023). 15

*Brown v. City of Chicago*, 713 F. Supp. 250 (N.D. Ill. 1989). 15

*Buckley v. Fitzsimmons*, 919 F.2d 1230 (7th Cir. 1990). 15

*Reversed on other grounds by* 509 U.S. 259, 113 S. Ct. 2606 (1993). 15

*Glass v. Vill. of Maywood*, 22 C 164, 2024 WL 4007643 (N.D. Ill. Aug. 30, 2024). 15

*Jackson v City of Chicago*, 20 C 5886, 2024 WL 1142015 (N.D.Ill.2024). 16

*Swick v. Liautaud*, 169 Ill.2d 504, 662 N.E.2d 1238 (1996). 16

*Beaman v. Freesmeyer*, 131 N.E.2d 488, 433 Ill. Dec. 130 (2019). 17

*Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). 18

*Fillmore v. Page*, 358 F.3d 496 (7th Cir. 2005). 18

*Gill v City of Milwaukee*, 850 F.3d 335 (7th Cir. 2017). 18

*Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). 18

*Hobbs v. Cappelluti*, 899 F. Supp. 2d, 738 (N.D. Ill. 2013). 18, 19

*Hurt v. Wise*, 880 F. 3d 831 (7th Cir. 2018). 19

*Overruled for other reasons by Lewis v. City of Chicago,* 914 F.3d 472 (7th Cir. 2020). 19

*Lifton v. Bd. Of Education of City of Chicago,* 416 F.3d 571 (7th Cir. 2005). 20

*Pub. Fin. Corp. v. Davis*, 66 Ill.2d 85 (1997). 20

*Schweihs v. Chase Home Finance, LLC,* 2016 IL 120041. 20

*Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 973 N.E.2d 880, 887 (Ill. 2012). 21

Respectfully Submitted,
NANCY GALASSINI ADDUCI

/s/ Michele J. Braun_______

Kenneth M. Battle
Michele J. Braun
O'CONNOR & BATTLE, L.L.P.
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
312-786-4000
kbattle@mokblaw.com
mbraun@mokblaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CARL REED,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD ZULEY, TIMOTHY THOMPSON, the CITY OF CHICAGO, NANCY GALASSINI ADDUCI, and COOK COUNTY,<br><br>Defendants. | Case No. 1:23-cv-17186<br><br>Judge John F. Kness<br><br>Magistrate Heather K. McShain |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NANCY GALASSINI ADDUCI'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Former Assistant State's Attorney Nancy Galassini Adduci ("Adduci"), by and through her attorneys Kenneth Battle and Michele Braun of O'Connor & Battle, LLP, pursuant to Federal Rules of Civil Procedure 56, hereby moves for summary judgement as to Counts I, II, III, IV, V, VII, VIII, IX and X of Plaintiff Carl Reed's ("Plaintiff") Amended Complaint. In support of this Motion for Summary Judgment, Adduci states as follows:

## I. INTRODUCTION

This case stems from the murder of Kim Van Vo ("Van Vo"), an elderly Asian male, who was stabbed to death in his apartment at an SRO living facility located at 4946 North Sheridan Road, Chicago, IL, sometime between July 14, 2001 and July 19, 2001. Defendant Adduci was the felony review Assistant State's Attorney ("ASA") assigned to review the homicide and determine whether to recommend to her supervisor if charges should be approved or rejected. SOF ¶¶ 5, 8. She arrived at Area 3 police station at 7:30 p.m. on July 22, 2001 after Plaintiff was already in custody and several witnesses identified him as the person they observed taking things out of Van

Vo's apartment and trying to sell Van Vo's car. SOF ¶¶ 6, 7, 9, 10. Acting within her core functions as a felony review ASA, Adduci proceeded to speak with the detectives, review the available police reports, interview Plaintiff and the fact witnesses and memorialize their statements before concluding there was sufficient evidence to recommend charging Plaintiff with first degree murder, armed robbery and residential burglary. SOF ¶¶ 6, 8, 13-63. On October 20, 2005, Plaintiff's Motion to Suppress his Statement was denied. SOF ¶ 64. On December 5, 2005, Plaintiff pled guilty and was sentenced to 27 years in prison. SOF ¶ 66. Plaintiff's conviction was vacated; however, on June 25, 2025, Plaintiff's petition for a certificate of innocence was denied. SOF ¶ 67.

On February 26, 2025, Plaintiff filed his Amended Complaint against Adduci, among other Defendants, alleging, in part, that Adduci, individually, jointly and in conspiracy with the Individual Defendant Officers, violated his constitutional rights by coercing him into making a false, incriminating statement and by fabricating evidence and statements against him, knowing them to be false. Plaintiff has settled with all other Defendants. However, he continues to pursue five claims against Adduci under 42 U.S.C. § 1983 and four state law claims. Adduci should be dismissed from this lawsuit because the record shows that there are no genuine issues of material fact which support Plaintiff's claims.

## II. STATEMENT OF UNDISPUTED FACTS

On July 19, 2001, the body of Van Vo was discovered in his apartment by the building manager of the SRO building. SOF ¶ 4. On July 22, 2001, Adduci, who was then employed as a Cook County ASA with the Felony Review Unit, was assigned to review this homicide. SOF ¶ 5. At approximately 7:30 p.m., Adduci arrived at the Area 3 police station and spoke with the detectives. SOF ¶ 6. Plaintiff was already in custody when she arrived. SOF ¶ 7. It was Adduci's job to review the police reports, memorialize statements and decide whether to recommend to her supervisor that charges be approved or rejected. SOF ¶ 8.

Before Adduci arrived at Area 3, the police interviewed several witnesses, including Ricardo Burns ("Burns") who told the police that Plaintiff tried to sell him Van Vo's car the day after Van Vo's body was found. SOF ¶ 9. Before Adduci arrived at Area 3, DeLong Reed ("DeLong") and Lester Garner ("Garner") had already told the police that they saw Plaintiff removing large items out of Van Vo's apartment, wrapped in blankets and DeLong had already passed a lie detector test. SOF ¶ 10. Before Adduci arrived at Area 3, Plaintiff was mirandized several times by the police, told the police each time that he understood his rights and never asked for clarification. SOF ¶ 11. On at least one occasion, Plaintiff told the detectives that he knew his rights and they did not have to repeat them, but they were repeated nonetheless and Plaintiff again stated that he understood them. SOF ¶ 12.

At approximately 8:00 p.m., Adduci interviewed Plaintiff in the presence of Detective Thompson. SOF ¶ 13. Plaintiff has no recollection of meeting with Adduci, nor does he recall what was said or what occurred during any of their interactions. SOF ¶ 14. Plaintiff denied speaking with anyone except for the police or seeing anyone in the interview room except for the detectives. SOF ¶ 15.

Adduci introduced herself to Plaintiff as an ASA, working with the police and not his lawyer. SOF ¶ 16. Plaintiff said he understood. *Id.* Adduci asked Plaintiff how he was feeling, and Plaintiff said he was feeling fine. SOF ¶ 17. Adduci advised Plaintiff of his Miranda rights and, after each right was read to him, Plaintiff told Adduci that he understood each right. SOF ¶ 18. Adduci asked Plaintiff if he wanted to talk to her, and Plaintiff said that he had no problem doing so. SOF ¶ 19.

At approximately 9:30 p.m., Adduci returned to Plaintiff's interview room with Detective Thompson, where she reminded Plaintiff who she was, asked if he would be willing to answer some questions; to which he responded that was fine, he would answer her questions. SOF ¶ 20.

Their second conversation lasted about thirty minutes. SOF ¶ 22. During this second conversation, Adduci asked Plaintiff if he would be willing to memorialize his statement in writing and explained that it could be done as a court reported statement, handwritten statement, or videotaped statement. SOF ¶ 21.

Once their conversation concluded, Adduci accompanied Detectives Thompson and Jin to 4946 N. Sheridan, Chicago, IL in order to interview the desk clerk, Dorothy Soukup ("Soukup"), who was working and unable to leave the premises. SOF ¶ 23. It was not unusual to go to another location if the witness was unavailable to come to the police station. SOF ¶ 24. The ASA would accompany the detectives because she would memorialize the witness's statement. *Id.*

After advising Soukup that she was a prosecutor and not Plaintiff's attorney, Soukup agreed to give her statement. SOF ¶ 25. At 10:17 p.m., Adduci memorialized Soukup's handwritten statement in the presence of Detective Jin. SOF ¶ 26. In summary, and not word for word, Soukup stated that, on July 19, 2021, at approximately 10:15 p.m., she saw Plaintiff leaving the building, carrying an object that was about four feet long and two feet wide, covered in a blanket, and that she documented her observations in the building's security log. SOF ¶ 27. The statement ended with Soukup stating that she was not threatened or promised anything in exchange for her statement; she was not under the influence of drugs or alcohol; she was treated well by the police and Adduci; she could read English and demonstrated that she could by reading out loud; she read all three pages and had a chance to make corrections that she wanted; and, finally, that Adduci read the statement out loud and the statement is true and accurate. SOF ¶ 28. Soukup later testified before the grand jury, under oath, that her statement was true and accurate, that no one threatened her or promised her anything in exchange for her statement, and that she was treated well by Adduci and the detectives. SOF ¶ 29.

After memorializing Soukup's statement, Adduci returned to Area 3 and proceeded to

memorialize the statements of Garner, Burns and Delong between the hours of 11:15 p.m. on July 22, 2001 and 1:00 a.m. on July 23, 2001. SOF ¶ 30. Adduci advised each of these witnesses that she was a prosecutor and not Plaintiff's attorney, and all three witnesses stated that they understood and agreed to give their statements. SOF ¶ 31.

According to Garner's statement and subsequent grand jury testimony, Burns came by the SRO building the day after Van Vo's body was found and told Garner that he was looking for Plaintiff because he wanted to return the car keys Plaintiff gave him to a white vehicle that Plaintiff was trying to sell him. SOF ¶ 32. When Garner heard the car was white, Garner told Ricky that he thought the car was Van Vo's car and to be careful. *Id.* Later that night, when Garner saw Burns in the third-floor hallway, Burns told Garner that Plaintiff went to the second floor to find the owner of the car so he could get the papers for Burns to buy the car. SOF ¶ 33. That same night, Garner saw Plaintiff leave his apartment with an object that was about four feet long and wrapped in a blanket. SOF ¶ 34. About a half-hour later, Garner saw Plaintiff leaving his apartment with a bag and head downstairs. *Id.* The statement ended with Garner stating that he was not threatened or promised anything in exchange for his statement, he was not under the influence of drugs or alcohol, was give coffee, a drink and allowed to use the washroom, was treated well by the police and Adduci, could read English and demonstrated that he could by reading out loud, read all four pages of his statement, had a chance to make corrections that he wanted, that Adduci read the statement out loud and the statement is true and accurate SOF ¶ 35. Garner later testified before the grand jury, under oath, that his statement was true and accurate, that no one threatened him or promised him anything in exchange for his statement and that he was treated well by Adduci and the detectives. SOF ¶ 36.

In summary, and not word for word, Burns stated that, on July 16, 2001, "Chuck" (who Burns later identified in a photo as Plaintiff) tried to sell Burns a white '91 Maxima car for $250.00

and when "Chuck" could not produce the "papers" for the car, Burns returned the keys to Plaintiff. SOF ¶ 37. Burns subsequently met with the detectives working the Van Vo homicide and told them everything about Plaintiff and the car. *Id.* The statement ended with Burns stating that he was not threatened or promised anything in exchange for his statement, he was not under the influence of drugs or alcohol, was given soda to drink and allowed to use the washroom, was treated well by the police and Adduci, could read English and demonstrated that he could by reading out loud, read all eight pages of his statement, had a chance to make corrections that he wanted, that Adduci read the statement out loud and the statement is true and accurate. SOF ¶ 38. Burns later testified before the grand jury, under oath, that his statement was true and accurate, that no one threatened him or promised him anything in exchange for his statement and that he was treated well by Adduci and the detectives. SOF ¶ 39.

In summary, and not word for word, DeLong stated, that he last saw his neighbor and friend, Mr. Van Vo on July 12, 2001, that he and Van Vo shared a bathroom that Van Vo always kept open. SOF ¶ 40. DeLong went to see his grandma on July 13 and returned to his apartment in the evening of July 15 when he noticed that the bathroom door and front door to Van Vo's apartment was closed, which was unusual. *Id.* When he knocked, there was no response. *Id.* The next evening, DeLong saw Plaintiff in Van Vo's apartment with the door open a crack. *Id.* Twenty seconds later, DeLong saw Plaintiff come out of Van Vo's apartment with one of Van Vo's speakers. *Id.* DeLong asked Plaintiff why he was in Van Vo's apartment, Plaintiff told him to go back to Plaintiff's apartment and that Van Vo was out of town. *Id.* Late that night, Plaintiff got another speaker from Van Vo's apartment and brought it back to his apartment. *Id.* The next day, De Long noticed a smell coming from Van Vo's apartment, asked Plaintiff if Van Vo was there when Plaintiff was in the apartment, and Plaintiff said no. *Id.* On July 19, 2026, DeLong asked Social Services to check Van Vo's apartment, and after they did, someone told him that Van Vo

had passed. *Id.* A few days later, DeLong told the police everything he saw. *Id.*

The statement ended with DeLong stating that he was not threatened or promised anything in exchange for his statement, he was not under the influence of drugs or alcohol but did take Haldol this month to be kept lucid, was gives soda to drink, McDonald's to eat and allowed to smoke cigarettes and to use the washroom, was treated well by the police and Adduci, could read English and demonstrated that he could by reading out loud, read all four pages of his statement, had a chance to make corrections that he wanted, that Adduci read the statement out loud and the statement is true and accurate. SOF ¶ 41. DeLong later testified before the grand jury, under oath, that his statement was true and accurate, that no one threatened him or promised him anything in exchange for his statement and that he was treated well by Adduci and the detectives. SOF ¶ 42.

Twenty-four years later, DeLong Reed had no recollection of speaking with an ASA after talking with the police. SOF ¶ 43. However, he admits that his recollection of events was better in 2005 when he testified before the grand jury than it is today. *Id.*

At approximately 2:00 a.m. on July 23, 2001, Adduci returned to Plaintiff's room and, in the presence of Detective Thompson, asked Plaintiff if he was ready and willing to memorialize his statement, Plaintiff told her that he wanted to do a handwritten statement and they moved to the conference room. SOF ¶ 44. Adduci asked Detective Thompson to get Plaintiff something to drink and, while he was gone, she asked Plaintiff how he was treated by the police and Plaintiff said "fine." SOF ¶ 45. Adduci asked Plaintiff whether the police threatened or made any promises to him, and Plaintiff said no. SOF ¶ 46. Their private conversation lasted about five minutes. *Id.* Adduci observed Plaintiff eat and drink, and Plaintiff told her that he was allowed to use the washroom. SOF ¶ 47.

Adduci started to memorialize Plaintiff's statement on the felony review pre-printed form. SOF ¶ 48. When she got to the pre-printed Miranda warnings, Adduci asked Plaintiff to read it to

himself and, if he understood and agreed to it, to sign it. SOF ¶ 49. Adduci watched Plaintiff sign on the line provided. *Id.* Adduci then proceeded to write out the 7-page statement that summarized what Plaintiff told her. SOF ¶ 50. The opening paragraph states that, after being advised of his Miranda rights, Plaintiff confirmed that he understood each of those rights, stated that he understood Adduci was an ASA and not his lawyer, and agreed to give his statement. SOF ¶ 51.

In summary, and not word for word, Plaintiff told Adduci that he was a high school graduate and could read and write English. SOF ¶ 52. According to his statement, Plaintiff entered Van Vo's apartment sometime in the middle of July, intending to trick him into paying cash for sex and then rob him. SOF ¶ 53. When Van Vo failed to present the cash and grabbed Plaintiff's T-shirt, they fell to the floor, Plaintiff saw a knife on the floor without a handle and stabbed Van Vo with it numerous times before he left the apartment. *Id.* Plaintiff denied being threatened or made any promises in return for his statement, denied being under the influence of alcohol or drugs, stated that he was given McDonalds, donuts and chip, soda to drink, was allowed to use the washroom whenever he wanted and was treated well by the police and Adduci. SOF ¶ 54.

Plaintiff never told Adduci that that he was diabetic or in need of medication, and nothing prompted her to ask if he had a medical condition because he never appeared to be in need of medical treatment. SOF ¶ 55. During the entire time they were together, Plaintiff never told Adduci that he wanted to remain silent, never asked Adduci for a lawyer, never told her the police threatened him, lied to him or made promises to him in exchange for his statement, and never told her that he wasn't allowed to sleep. SOF ¶ 56.

After the entire statement was written, Adduci moved to the other side of the table to sit next to Plaintiff, asked him to read the first paragraph below the Miranda warning out loud so that she knew he could read; and he did so. SOF ¶ 57. After hearing him read aloud, Adduci was confident he could understand and read English. SOF ¶ 58. Adduci read the rest of the statement

out loud while Reed followed along. SOF ¶ 59. When she got to the last paragraph on page 7, Adduci realized that she forgot to state that Plaintiff declined doing a court reported statement, told Plaintiff she forgot, added it and she, Plaintiff, and the detective initialed the insertion. SOF ¶ 60. Adduci also corrected two words that she misspelled [“handle” and “killed”] after Plaintiff agreed to the change and initialed the correction along with Detective Thompson and herself. SOF ¶ 61. Plaintiff, Detective Thompson and ASA Adduci signed each page of the 7-page statement after all corrections were made. SOF ¶ 62. It took 45 minutes to an hour to complete the handwritten statement. *Id.* A polaroid picture of Plaintiff was taken, and all three initialed the photo. *Id.*

Based on all the evidence, Adduci recommended to her supervisor that Plaintiff be charged with first degree murder. SOF ¶ 63. Her supervisor approved the charges. *Id.*

On October 20, 2005, the Honorable Judge Marjorie C. Laws denied Plaintiff's Motion to Suppress his July 23, 2001 statement. SOF ¶ 64. Part of her reasoning was that there was not enough information to establish that Plaintiff was not able to read or understand Miranda. *Id.* By 2001, Plaintiff was living on his own, away from family, navigating public transportation on his own, passed the written driver's test, held several jobs, was volunteering at a nearby shelter, buying groceries on his own and paying bills. SOF ¶ 65. He also helped his girlfriend's grandchildren with their homework. *Id.*

On December 5, 2005, Plaintiff pled guilty to first degree murder and was sentenced to 27 years in prison. SOF ¶ 66. Plaintiff's conviction was vacated; however, on June 25, 2025, Plaintiff's petition for a certificate of innocence was denied. SOF ¶ 67.

## III. <u>STANDARD OF REVIEW</u>

Summary judgment should be granted when “the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.”

Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex*, 477 U.S. at 323-24. This is done by pointing out an absence of evidence to support the non-moving party's case. *Id.* at 325. This does not mean there cannot be any dispute over any fact, only those that are material to the pending claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001).

Once a request is made, the burden shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial" by referring to the record. *Moore v. J.B. Hunt Transp., Inc*., 221 F.3d 944, 952 (7th Cir. 2000). These must be actual facts and more than just collective hunches, speculation, conjecture, and rumor. *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008); *Anderson,* 477 U.S. at 248-49 (mere allegations and denials are insufficient to ward off summary judgment). In other words, summary judgment is the "put up or shut up" time where the non-moving party must show the evidence it has that would convince a trier of fact to accept its version of events. *Springer*, 518 F.3d at 484; *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007).

## IV. ARGUMENT

### A. ASA Adduci is Entitled to Absolute Prosecutorial Immunity

It is well-settled that prosecutors have absolute immunity for conduct that is intimately associated with the judicial phase of the criminal process. *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003). A prosecutor is shielded by absolute immunity when she acts as an advocate for the State but not when her acts are investigative and unrelated to the preparation and initiation of judicial proceedings. Id.

The record in this case is devoid of any facts or testimony that will show Adduci acted outside her prosecutorial role as a felony review ASA. By the time she arrived at Area 3, Plaintiff

was already in police custody and several witnesses had already identified Plaintiff as the person they saw going in and out of Van Vo's apartment with objects wrapped in blankets, and as the person who attempted to sell Van Vo's car to Ricardo Burns a/k/a "Ricky" ("Burns"). SOF ¶¶ 7, 9. It was only after all this occurred that Adduci, acting within the core functions of a felony review ASA, independently reviewed the evidence gathered by the police, spoke with and memorialized the statements of Plaintiff and fact witnesses before recommending to her supervisor that charges be brought against Plaintiff for Van Vo's murder. SOF ¶¶ 6, 8, 13-62. She did her job, plain and simple; nothing more, nothing less.

The record is also devoid of any facts which show that Adduci acted outside her prosecutorial role by coercing Plaintiff into giving a fabricated statement that she knew, with certainty, was false. Plaintiff admits that he has no memory of his interactions with Adduci. SOF ¶ 14. Further, no witness associated with this case are expected to testify regarding any purported coercion to provide a fabricated statement. The only testimony a jury will hear would be Adduci's categorized denial of such allegations. Consequently, there is no direct evidence to support Plaintiff's assertion.

Plaintiff's suggestion that his "illiteracy," intellectual disabilities and medical condition made him particularly vulnerable to psychological coercion also fails to raise a genuine issue as to whether Adduci coerced him into making a false, fabricated statement because such an inference is based on nothing more than mere speculation. There is no evidence that even remotely suggests that Adduci was aware of these alleged vulnerabilities during their interactions. SOF ¶¶ 17, 18, 45-47, 49, 51-62. Plaintiff never told Adduci that he could not read, that he did not understand his Miranda rights, was a diabetic or in need of medication. SOF ¶¶ 51-52, 55-56. Instead, it remains undisputed that Plaintiff told Adduci he was a high school graduate, was able to read, demonstrated his ability to read to her satisfaction, told Adduci that he understood his Miranda right and never

sought clarification. *Id*, and *SOF* ¶ 57. Moreover, Adduci never observed any signs or symptoms of Plaintiff being in need of medical treatment or being intellectually disabled. SOF ¶¶ 46, 49-52, 54-58. Consequently, Plaintiff has failed to raise a genuine issue of material fact as to whether Adduci's conduct can be characterized as anything other than prosecutorial.

Plaintiff cannot establish that Adduci acted in an investigative capacity simply because she took statements from Plaintiff and the fact witnesses. Courts have consistently found that memorializing a defendant or witness statement falls on the prosecutorial rather than the investigative side of the line. *Kitchen v. Burge,* 781 F.Supp.2d 721, 730 (N.D. Ill. 2011) (collection of cases). Courts have also reasoned that an ASA should not be deprived of absolute prosecutorial immunity simply because, in a case of murder, she decides to hear what the defendant has to say for herself instead of simply taking the word of the police. *Id.*, (citing *Andrews v. Burge*, 660 F.Supp.2d 868, 878 (N.D. Ill. 2009)). By memorializing the statements, Adduci was simply preserving evidence for purposes of initiating judicial proceedings. Again, this was plainly the job of a felony review ASA at that time.

Absent pure speculation, Plaintiff cannot establish that Adduci acted outside her core functions as a felony review ASA. Adduci is therefore entitled to absolute prosecutorial immunity. Summary judgment should be entered in her favor and against Plaintiff as to all counts asserted against her in Plaintiff's Amended Complaint.

**B. <u>Adduci is Entitled to Qualified Immunity on the Plaintiffs' Federal Claims.</u>**

Alternatively, if the Court finds that Adduci's actions were somehow investigative in nature, Plaintiff's federal claims should still be dismissed against Adduci under the doctrine of qualified immunity.

Qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known. *Fields v Wharrie*, 740 F.3d 1107, 1109 (7th Cir. 2014) (citing *Pearson v Callahan*, 555 U.S. 223, 231 (2009)) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Therefore, in order to survive a motion for summary judgment, Plaintiff has the burden to show that the evidence, construed in the light most favorable to him, supports a finding that (1) the defendant violated a clearly established constitutional right and that (2) the constitutional right was clearly established at the time and under the circumstances presented such that any reasonable person should have known what was required. *Whitlock v. Brueggermann*, 682 F.3d 567, 576 (7th Cir. 2012) (citing *Pearson*, 555 U.S. at 232; *Gill v. City of Milwaukee,* 850 F.3d 335, 340 (7th Cir. 2017)). The Court may may consider these questions in whatever order seems best for the case at hand. *Whitlock,* 682 F.3d at 576.

1. **The Evidence Fails to Demonstrate That Adduci's Conduct Violated Plaintiff's Constitutional Rights by Coercing Him into Making a False, Incriminating Statement.**

Individual liability under 42 U.S.C. Sec. 1983 requires personal involvement in the alleged constitutional deprivation. *Hill v City of Chicago,* 2009 WL 174994, at *5 (N.D. Ill. Jan. 26, 2009). The record in this case is devoid of any evidence that would allow a reasonable jury to infer that Adduci was personally involved in coercing Plaintiff into making a false incriminating statement. According to his own complaint, it was the police who took Plaintiff into custody, handcuffed him to a ring on the wall and used brutal and inappropriate tactics to force him into confessing to a crime that he now claims he did not commit. Ex. A. ¶ 23. Plaintiff admits that he has no memory of Adduci or of any ASA being present in the room when these police officers allegedly coerced him into incriminating himself. SOF ¶¶ 14-15. He denies speaking with anyone except for the police. SOF ¶ 15. And, he has presented no evidence to rebut Adduci's testimony that he never told her the police threatened him, lied to him, made promises to him in exchange for his statement and did not allow him to sleep. SOF ¶¶ 54-56. Consequently, there is no evidence from which a

jury may conclude that Adduci was personally involved in, or knew anything about the coercive tactics allegedly used by the police to incriminate Plaintiff.

Similarly, there is no evidence from which a reasonable jury could infer that Adduci used psychological coercion to force Plaintiff into making a false incriminating statement against his will during the three times that they met. As noted above, Plaintiff has no memory of his interactions with Adduci and Adduci completely denies such coercion when testifying extensively about her three meetings with Plaintiff. SOF ¶¶ 14-15. Consequently, there is no direct evidence of any coercion being used.

Even assuming, arguendo, that Plaintiff could prove Adduci used coercive interrogative tactics to obtain Plaintiff's confession—which she did not—the use of coercive tactics, alone, does not amount to a constitutional violation. *Coleman v. City of Peoria, Illinois*, 92 F.3d 336, 346 (2019). Absent evidence that Adduci extracted an involuntary or fabricated confession, knowing it to be false, such tactics are insufficient, by themselves, to reasonably infer that Adduci violated Plaintiff's constitutional rights. *Coleman*, 925 F.3d 346. This is because evidence collected with these kinds of tactics, unlike falsified evidence or perjured testimony, may turn out to be true. *Id.* ("Coerced testimony is not necessarily fabricated."); *cf. Whitlock v. Brueggermann*, 682 F.3d 567, 576 (7th Cir. 2012) (noting that evidence collected with perjured testimony, as opposed to mere coercion, did not turn out to be true).

For these reasons, Adduci is entitled to qualified immunity. Summary judgment should be entered in her favor and against Plaintiff as to Counts II in Plaintiff's Amended Complaint.

**2. <u>The Evidence Fails to Demonstrate That Adduci Fabricated False Evidence and Statements, Knowing them to be False.</u>**

Plaintiff claims that Adduci, while acting individually, jointly and/or in conspiracy with the Defendant police officers, fabricated evidence and statements that she knew were false and then used that evidence to convict him. In order to prevail on this claim, Plaintiff must come forward

with evidence that not only proves the statements Adduci memorialized were false but that she deliberately manufactured them, knowing, with certainty, that they were false. *Whitlock v. Brueggermann*, 682 F.3d 567, 580 (7th Cir. 2012); *Fields*, 740 F.3d at 1114; *Petty v City of Chicago*, 754 F.3d 416, 421-22 (7th Cir. 2014). *Coleman*, 925 F.3d at 346 (citing *Fields*, 740 F.3d at 1107). There are no facts, testimony or evidence in this case linking Adduci to some sort of conspiracy with the Defendant police officers to fabricate evidence. It is pure fiction.

Adduci's job was to evaluate the overall strength of all the evidence gathered against Plaintiff and determine whether it was sufficient to meet the elements of the crimes with which he would be charged. SOF ¶ 8; *Crowder v. Barrett*, 22-1899, 2023 WL 3145312, at *1 (7th Cir. Apr. 28, 2023) (noting that the ASA in the felony review unit "evaluates evidence to determine whether to approve felony charges"); *Brown v. City of Chicago*, 713 F. Supp. 250, 252 (N.D. Ill. 1989) ("This 'felony review' process requires the State's Attorney to review the charges prior to the probable cause hearing."). It was not her role to determine whether there was already proof beyond a reasonable doubt that Plaintiff committed the crimes with which he was charged. *Buckley v. Fitzsimmons*, 919 F.2d 1230 (7th Cir. 1990) ("Probable cause is enough to initiate a criminal prosecution. It takes proof beyond a reasonable doubt to convict."), *reversed on other grounds*, 509 U.S. 259, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993); *Glass v. Vill. of Maywood*, 22 C 164, 2024 WL 4007643, at *8 (N.D. Ill. Aug. 30, 2024) ("But probable cause demands much less than proof beyond a reasonable doubt.") (quoting *Washington v. City of Chicago*, 98 F.4th 860 (7th Cir. 2024)). That is left to the trier of fact.

Furthermore, there is no evidence that Adduci fed, coached or supplied Plaintiff with false details about how he committed the crime. In fact, there is a great deal of evidence through Adduci's testimony that completely rebuts these allegations. SOF ¶¶ 44-61. Consequently, there is no reasonable basis for a jury to conclude that Adduci fabricated his statement, knowing, with

certainty, that it was false. While Plaintiff is entitled to have all reasonable inferences drawn in his favor, inferences that are supported by only speculation and conjecture cannot defeat a summary judgment motion. *Coleman*, 925 F.3d at 345.

Similarly, there is no evidence from which a jury could reasonably infer that Adduci fabricated any of the witness statements. Such an inference would not be reasonable when DeLong, Soukup, Garner and Burns testified, under oath, that their statements were true and accurate, no one threatened them or promised them anything in exchange for their statement, and they were treated well by Adduci and the detectives. SOF ¶¶ 29, 36, 39, 42. Summary judgment should be entered in favor of Adduci and against Plaintiff as to Counts I in Plaintiff's Amended Complaint.

**3. The Evidence Fails to Demonstrate that Adduci Withheld Exculpatory Evidence.**

Plaintiff alleges that Adduci withheld exculpatory evidence without identifying what evidence was allegedly concealed. Rather, his contention seems to be that Adduci committed a *Brady* violation by keeping quiet about her alleged fabrication of evidence. The Seventh Circuit however does not permit recasting fabrication claims as *Brady*-based due process claims. *Jackson v City of Chicago*, 20 C 5886, 2024 WL 1142015, at *12 (N.D.Ill.2024). Adduci is entitled to summary judgment on this claim.

**4. Adduci is Entitled to Summary Judgement on Plaintiff's Claims for Malicious Prosecution.**

In Counts III and VII, Plaintiff alleges that Defendants maliciously prosecuted Plaintiff by accusing him of criminal activity and exerting influence to initiate and perpetuate judicial proceedings against him without any probable cause. Although count III is a federal constitutional claim and count VII is a state tort, the existence of probable cause defeats both counts. *Coleman v. City of Peoria Illinois,* 925 F.3d 336 (7th Cir. 2019) (citing *Swick v. Liautaud,* 169 Ill.2d 504, 662 N.E.2d 1238 (1996)). Probable cause exists where the defendant is aware of facts and circumstances to warrant a prudent person into believing that the plaintiff has committed the

crime. *Coleman*, 925 F.3d at 350. In order to prevail on his claim, Plaintiff must present evidence that the defendant acted with malice. *Beaman v. Freesmeyer*, 131 N.E.2d 488, 494, 433 Ill. Dec. 130 (2019).

The totality of the facts and circumstances known to Adduci were sufficient to lead a reasonable person to believe that a specific crime was committed and that Plaintiff committed it. In addition to Plaintiff's incriminating statement wherein he admits to stabbing the decedent multiple times with a knife that had no handle, DeLong Reed identified Plaintiff as the person he saw coming out of Van Vo's apartment with a tall stereo speaker and then later get another speaker from Van Vo's apartment and bring it back to his own apartment SOF ¶¶ 40, 53. Dorothy Soukup and Lester Garner corroborated DeLong's Reed's account by identifying Plaintiff as the person they observed carrying something out of the SRO building on July 19, 2001 that was approximately four feet long and wrapped in a blanket. SOF ¶¶ 27, 34. Ricardo Burns also identified Plaintiff as the person who attempted to sell Van Vo's car to him without being able to produce the title and registration for the car. SOF ¶ 37. In addition, the knife that Plaintiff described using to stab Van Vo was found under Van Vo's body. *Ex A* ¶ 19. When considering all of these facts, Adduci had every reason to conclude there was sufficient evidence to recommend to her supervisor that Plaintiff be charged.

Moreover, the core functions of a felony review ASA did not require Adduci to prove Plaintiff guilty beyond a reasonable doubt. SOF. Her role was to ensure that the elements of the crimes for which she recommended approving charges were met. SOF Once Adduci recommended to her supervisor that charges be approved, it was up to the criminal justice system to determine Plaintiff's guilt or innocence. SOF ¶ 8. And, in this case, Plaintiff pled guilty. SOF ¶ 66. Summary judgment should be entered in Adduci's favor on Counts III and VII of the Amended Complaint.

### 5. **<u>Adduci is Entitled to Summary Judgement on Plaintiff's Claim for Failure to Intervene.</u>**

In order for there to be a failure to intervene, an underlying constitutional violation must exist. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (citing *Fillmore v. Page*, 358 F.3d 496 (7th Cir. 2005)). For the reasons noted above, the evidence is insufficient to establish that Adduci violated any of Plaintiff's constitutional rights or had knowledge of anyone violating Plaintiff's rights. Under these circumstances, Adduci cannot be held liable for failure to intervene. Even assuming, *arguendo*, that the facts are sufficient to establish a constitutional violation, the burden is on plaintiff to demonstrate that the defendant (1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it. [Emphasis added] *Gill v City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). Plaintiff has no evidence or testimony to offer at trial to support such allegations. Plaintiff's speculation is insufficient to raise a genuine issue of material fact for trial. Similarly, Plaintiff has also failed to present any facts which demonstrate that Adduci knew any of the statements she memorialized were false or fabricated or that Plaintiff was vulnerable to making an unreliable statement. In fact, the opposite is true. All the witnesses corroborated their statements to Adduci, and Plaintiff told Adduci he had a high school diploma and read aloud to her. SOF ¶¶ 28, 35, 38, 41, 52, 57. It therefore follows that Adduci cannot be held liable for failure to intervene.

The facts in this case are similar to the facts in *Hobbs v. Cappelluti,* 899 F. Supp. 2d, 738 (N.D. Ill. 2013), where the plaintiff sued the Lake County ASAs for failing to intervene in a conspiracy to convict him of murder, after he was later exonerated by DNA evidence. The plaintiff alleged that the ASAs failed to intervene in the police investigation. *Hobbs,* 899 F. Supp. 2d, at 748. The court reasoned that, in Illinois, ASAs do not have police powers and cannot command police operations, so there is no duty for ASAs to intervene in police investigations. *Hobbs,* 899 F. Supp. 2d at 772. For these reasons, Adduci is entitled to summary judgment on Count IV.

**6. <u>Adduci is Entitled to Summary Judgement on Plaintiff's Civil Conspiracy Claim.</u>**

In Count V, Plaintiff contends that the Defendants, acting in concert with one another, reached an agreement amongst themselves to violate Plaintiff's constitutional rights by fabricating evidence that was used to detain, prosecute and convict Plaintiff. In order to prevail on his § 1983 claim, Plaintiff must show that multiple people reached an agreement to deprive him of a constitutional right, an overt act in furtherance of the conspiracy and that the acts deprived plaintiff of a constitutional right. *Hurt v. Wise*, 880 F. 3d 831, 842 (7th Cir. 2018) *overruled for other reasons by Lewis v. City of Chicago*, 914 F.3d 472 (7th Cir. 2020). The burden is on Plaintiff to come forward with sufficient evidence to prove these allegations. Plaintiff cannot do so.

Here, there is no evidence, circumstantial or otherwise, that confirms the existence of an agreement between Adduci and the other Defendants to violate Plaintiff's constitutional rights. Any suggestion to the contrary is based on nothing more than mere speculation. Adduci is therefore entitled to summary judgment on Count V.

Similarly, Plaintiff has failed to prove a civil conspiracy claim under Illinois law. In order to do so, Plaintiff must establish that Adduci voluntarily participated in a conspiracy to recommend charging Plaintiff for murder. *Hobbs,* 899 F. Supp. 2d, at 748. The factual record in this case is simply devoid of any evidence, direct or circumstantial, that Adduci and the Defendant Officers agreed to violate Plaintiff's constitutional rights. Any suggestion to the contrary is based on speculation. The factual record is also devoid of any evidence that Adduci planned, assisted or encouraged the Defendant Officers to violate Plaintiff's constitutional rights. Instead, the evidence shows that, in accordance with her duties as the felony review ASA, Adduci took the appropriate steps to evaluate the evidence gathered by the police and to memorialize the evidence before recommending to her supervisor that charges be approved. Adduci is therefore entitled to summary judgment on Counts v and X.

## C. **Adduci is Entitled to Summary Judgment on Plaintiffs' State Law Claim for Intentional Infliction of Emotional Distress (IIED).**

Plaintiff fails to produce any evidence of intentional infliction of emotional distress and therefore this claim must be dismissed. To state a claim for intentional infliction of emotional distress, a plaintiff must allege that "(1) defendants' conduct was extreme and outrageous; (2) defendants either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and (3) defendants' conduct actually caused severe emotional distress." *Lifton v. Bd. Of Education of City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005) (quoting *Thomas v. Fuerst*, 803 N.E.2d 619, 625 (1st Dist. 2004)). To establish extreme and outrageous conduct, Plaintiff must allege more than "mere insult, indignities, threats, annoyances, petty oppression or trivialities." *Pub. Fin. Corp. v. Davis*, 66 Ill.2d 85, 89 (1997). "Rather, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Id.*

Nothing in the record suggests that Adduci's conduct was extreme and outrageous. She was acting within her core functions as a Felony Review ASA when she evaluated the evidence gathered by the police and memorialized the statements given by plaintiff and witnesses before independently concluding there was sufficient evidence to recommend charges be approved. SOF ¶ 8. She did her job. According to the Illinois Supreme Court's decision in *Schweihs v. Chase Home Finance, LLC,* 2016 IL 120041, people merely performing their job functions does not constitute extreme and outrageous conduct. *See Schweihs v. Chase Home Finance, LLC,* 2016 IL 120041 ¶¶ 54 - 61. There is not one shred of evidence to show Adduci caused Plaintiff's purported emotional distress. This is especially true when Plaintiff has no recollection of interacting with her. Summary judgment should be granted in Adduci's favor as to Count VIII.

**D. Adduci is Entitled to Summary Judgement on Plaintiff's State Law Claim of Willful and Wanton Conduct/Aggravated Negligence.**

In order to recover damages based on willful and wanton conduct, a plaintiff must plead and prove basic elements of a negligence claim – that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was a proximate cause of the plaintiff's injury. In addition, plaintiff must allege and prove either a deliberate intention to harm or a conscious disregard for the plaintiff's welfare. *Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 973 N.E.2d 880, 887 (Ill. 2012). Plaintiff has failed to do so.

First, there is no evidence from which a reasonable jury could infer that Adduci acted with a deliberate intention to harm Plaintiff. Listening to what Plaintiff had to say for himself and then memorializing his statement in preparation for the initiation of judicial proceedings was entirely consistent with the core functions of her job as a felony review ASA.

Second, there are no facts from which a jury could reasonably infer that Adduci acted with a conscious disregard for Plaintiff's welfare. Instead, she exercised ordinary care for Plaintiff's welfare by asking him in private whether he was threatened or mistreated by the police. SOF ¶ 46. She tested his ability to read and understand English by having him read a section of the statement out loud and confirmed his understanding of his Miranda rights both verbally and in writing. SOF ¶¶ 18, 49, 51.

As a felony review ASA, it was Adduci's duty to determine whether there was sufficient evidence to recommend approving charges. SOF ¶ 8. In order to do so, she memorialized what Plaintiff and the fact witnesses told her and then evaluated whether the evidence was sufficient to meet each element of the crimes with which he would be charged. Plaintiff has failed to come forward with any evidence that proves Adduci breached her duty.

For these reasons, summary judgment should be awarded in Adduci's favor as to Count IX.

## CONCLUSION

While erroneous convictions are unquestionably human tragedies, a vacated criminal conviction does not automatically establish that an individual's constitutional rights were violated or that the evidence was fabricated. Here, Plaintiff has failed to present sufficient evidence to support his claim that Adduci violated his constitutional rights or committed tortious acts against him. She did the job of a felony review ASA. The record does not present a genuine issue of material fact for trial as it relates to Defendant Adduci. For the reasons stated above, and those in Adduci's supporting documents, Adduci's Motion for Summary Judgement should be granted as to all counts directed against her in Plaintiff's Amended Complaint.

Respectfully Submitted,

NANCY GALASSINI ADDUCI

/s/ Michele J. Braun_______

Kenneth M. Battle
Michele J. Braun
O'CONNOR & BATTLE, L.L.P.
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
312-786-4000
kbattle@mokblaw.com
mbraun@mokblaw.com

## CERTIFICATE OF SERVICE

I, Michele J. Braun, an attorney, certify that a copy of the attached instrument was served via electronic case filing on all parties of record, on this 24th day of August 2026.

/s/ Michele J. Braun

Kenneth M. Battle
Michele J. Braun
O'CONNOR & BATTLE, L.L.P.
20 N. Clark St., Suite 1600
Chicago, IL 60602
312-422-9400
kbattle@mokblaw.com
mbraun@mokblaw.com