**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CARL REED,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD ZULEY, TIMOTHY THOMPSON, the CITY OF CHICAGO, NANCY GALASSINI ADDUCI, and COOK COUNTY,<br><br>Defendants. | Case No. 1:23-cv-17186<br><br>Judge John F. Kness<br><br>Magistrate Heather K. McShain |

**DEFENDANT NANCY GALASSINI ADDUCI'S LOCAL RULE 56.1(a)(3) STATEMENT OF UNCONTESTED FACTS**

Defendant Former Assistant State's Attorney Nancy Galassini Adduci ("Adduci"), by and through her attorneys Kenneth Battle and Michele Braun of O'Connor & Battle, LLP submits her 56.1(a)(3) statement of undisputed material facts in support of her motion for summary judgement as to all counts in Plaintiff Carl Reed's Amended Complaint that are directed against her, namely Counts I-V, VII -X, and state as follows:

1. Plaintiff Carl Reed ("Plaintiff") is a resident of Illinois. *Ex. A (Amended Complaint)*, ¶ *9.*

2. At all relevant times herein, Defendant Adduci was employed as an Assistant State's Attorney ("ASA") with the Cook County State's Attorney's Office ("CCSAO") assigned to the Felony Review Unit. *Ex. A (Amended Complaint), ¶ 13, Ex. B (Adduci's Answer to Amended Complaint), ¶ 13, Ex. C (Adduci's Testimony at Motion to Suppress Hearing), BS REED 002393: 8-13, Ex. D (Adduci's Deposition), p. 12:23-25;14,15:1.*

**JURISDICTION**

3. This court has jurisdiction and venue is proper in this lawsuit. *Ex. A ¶ 6-8.*

**UNDISPUTED FACTS**

4. On July 19, 2001, the body of Kim Van Vo ("Van Vo") was discovered in his apartment by the building manager of the SRO building located at 4946 N. Sheridan Rd, on Chicago's North side. *Ex. A (Amended Complaint), ¶ 18.* He had been stabbed eleven times. *Id. at ¶ 19.*

5. On July 22, 2001, Adduci, who was then employed as a Cook County Assistant State's Attorney ("ASA") with the Felony Review Unit, was assigned to review this homicide. *Ex. C (Adduci's Testimony at Motion to Suppress Hearing), BS REED 002393:8–13;20–23, BS REED 002394:1–10.*

6. At approximately 7:30 p.m., Adduci arrived at the Area 3 police station and spoke with the detectives. *Ex. C (Adduci's Testimony at Motion to Suppress hearing), BS REED 002393:20-24; BS REED 002394:11-13, Ex. D (Adduci's Deposition) p. 124;10-16.*

7. Plaintiff was already in custody when she arrived. *Ex. D (Adduci's Deposition), p.51:8-17.*

8. It was Adduci's job to review the police reports, memorialize statements and decide whether to recommend to her supervisor that charges be approved or rejected. *Ex. D (Adduci's Deposition), p. 29:1-6, 42:16-18, 50:1-7.*

9. Before Adduci arrived at Area 3, the police interviewed several witnesses, including Ricardo Burns ("Burns") who told the police that Plaintiff tried to sell him Van Vo's car the day after Van Vo's body was found. *Ex. E (Ricardo Burns's Deposition) pages 63-80.*

10. Before Adduci arrived at Area 3, DeLong Reed ("DeLong") and Lester Garner ("Garner") had already told the police that they saw Plaintiff removing large items out of Van Vo's apartment, wrapped in blankets and Delong had already passed a lie detector test. *Ex. F (DeLong Reed's Grand Jury Testimony) CCSAO _ 000459:20-24-CSAO_000460:1-17; Ex. G (Delong Reed's 7/17/25 Deposition), p. 35:8-10; 118:5-22; 137:5-9; 139:8-23; Ex. H (DeLong Reed's 3/19/26 Deposition), p.28:5-8; Ex. I (Lester Garner's Grand Jury Testimony), CCSAO_000416:19-24-CCSAO_000418:1-11.*

11. Before Adduci arrived at Area 3, Plaintiff was mirandized several times by the police, told the police each time that he understood his rights and never asked for clarification. *Ex. J (Plaintiff's 4/1/25 Deposition), p. 59:5-9,60:6-12;75:4-7, Ex. K (Det. Zacharias's Testimony at Motion to Suppress Hearing), BS Reed 002240:4-23; Ex. L (Thompson's Testimony at Motion to Suppress Hearing), BS REED 002248: 4-18; Ex. M (Zuley's Testimony at Motion to Suppress Hearing), BS REED 002330:11-23-B REED 002331:1-3; 11-23.*

12. On at least one occasion, Plaintiff told the detectives that he knew his rights and they did not have to repeat them, but they were repeated nonetheless and Plaintiff stated that he understood them. *Ex. M (Zuley's Testimony at Motion to Suppress Hearing), BS REED 002331:11-23.*

13. At approximately 8:00 p.m., Adduci interviewed Plaintiff in the presence of Detective Thompson. *Ex. C (Adduci's Testimony at Motion to Suppress Hearing), BS REED 002394:23-24; BS REED 002395:1-4,14-17, Ex. L (Thompson's Testimony at Motion to Suppress Hearing), BS REED 002256:22-24, BS REED:1-9.*

14. Plaintiff has no recollection of meeting with Adducci, nor does he recall what was said or what occurred during any of their interactions. *Ex. J (Plaintiff's Deposition, taken 4/1/25), p. 114:5-7; Ex. N (Plaintiff's Deposition, taken 4/15/25), p.123:20-24-125:1-12.*

15. Plaintiff denied speaking with anyone except for the police or seeing anyone in the interview room except for the detectives. *Ex. J (Plaintiff's Deposition, taken 4/1/25), p.112:15-17, 114:5-7; Ex. N (Plaintiff's Deposition, taken 4/15/25), p.123:20-24-125:1-12.*

16. Adduci introduced herself to Plaintiff as an ASA, working with the police and not his lawyer. Plaintiff said he understood. *Ex. C (Adduci's Testimony at Motion to Suppress Hearing), p. BS REED 002395:20-24, BS REED 002396:4-7. Ex. L (Thompson's Testimony at Motion to Suppress hearing) BS REED 002257:13-20.*

17. Adduci asked Plaintiff how he was feeling, and Plaintiff said he was feeling fine. *Ex. C (Adduci's Testimony at Motion to Suppress Hearing), p. BS REED 002395:20-24, BS REED 002396:1, 8-10.*

18. Adduci advised Plaintiff of his Miranda rights and, after each right was read to him, Plaintiff told Adduci that he understood each right. *Ex. C Adduci's Testimony at Motion to Suppress Hearing), p. BS REED 002395:20-24-BS REED 002397:1-8, Ex. L (Thompson's Testimony at Motion to Suppress Hearing) BS REED 002257:13-20, BS REED 002258:1-10.*

19. Adduci asked Plaintiff if he wanted to talk to her, and Plaintiff said that he had no problem doing so. *Ex. C (Adduci's Testimony at Motion to Suppress Hearing), p. BS REED 002397:9-15.* Their conversation lasted fifteen minutes. *Ex. L (Thompson's Testimony at Motion to Suppress Hearing) BS REED 002258:14-15.*

20. At approximately 9:30 p.m., Adduci returned to Plaintiff's interview room with Detective Thompson, where she reminded Plaintiff who she was, asked if he would be willing to answer some questions; to which he responded that was fine, he would answer her questions. *Ex.*

*C (Adduci's Testimony at Motion to Suppress Hearing), p. BS REED 002397:23-24, BS REED 002398:1-20; Ex. L (Thompson's Testimony at Motion to Suppress Hearing), p. BS REED 002258:16-21.*

21. During this second conversation, Adduci asked Plaintiff if he would be willing to memorialize his statement in writing and explained that it could be done as a court reported statement, handwritten statement, or videotaped statement. *Ex. C (Adduci's Testimony at Motion to Suppress Hearing), p. BS REED 002400:5-24 - BS REED 002401:1.*

22. Their second conversation lasted about thirty minutes. *Ex. C (Adduci's Testimony at Motion to Suppress Hearing), p. BS REED 002398:23-24, BS REED 002399:1-4; Ex. L (Thompson's Testimony at Motion to Suppress Hearing), p. BS REED 02259:1-2.*

23. Once their conversation concluded, Adduci accompanied Detectives Thompson and Jin to 4946 N. Sheridan, Chicago, IL in order to interview the desk clerk, Dorothy Soukup ("Soukup"), who was working and unable to leave the premises. *Ex. C (Adduci's Testimony at Motion to Suppress Hearing), p. BS REED 002413:1-13; Ex. O (Jin's Deposition), p.109:1-16, Ex. P (Soukup's Grand Jury Testimony) p. CCSAO_000437:19-23.*

24. It was not unusual to go to another location if the witness was unavailable to come to the police station. *Ex. O (Jin's Deposition), p. 76:9-12.* The ASA would accompany the detectives because she would memorialize the witness's statement. *Ex. O (Jin's Deposition), p. 76:13-15.*

25. After advising Soukup that she was a prosecutor and not Plaintiff's attorney, Soukup agreed to give her statement. *Ex. Q (Soukup's Handwritten Statement).*

26. At 10:17 p.m., Adduci memorialized Soukup's handwritten statement in the presence of Detective Jin. *Ex. Q (Soukup's Handwritten Statement).*

27. In summary, and not word for word, Soukup stated that, on July 19, 2021, at approximately 10:15 p.m., she saw Plaintiff leaving the building, carrying an object that was about four feet long and two feet wide, covered in a blanket, and that she documented her observations in the building's security log. *Ex. Q (Soukup's Handwritten Statement), Ex. P (Soukup's Grand Jury Testimony), p. CCSAO_000435:18-24 - CCSAO_000437:1-18.*

28. The statement ended with Soukup stating that she was not threatened or promised anything in exchange for her statement; she was not under the influence of drugs or alcohol; she was treated well by the police and Adduci; she could read English and demonstrated that she could by reading out loud; she read all three pages and had a chance to make corrections that she wanted; and, finally, that Adduci read the statement out loud and the statement is true and accurate. *Ex. Q (Soukup's Handwritten Statement).*

29. Soukup later testified before the grand jury, under oath, that her statement was true and accurate, that no one threatened her or promised her anything in exchange for her statement, and that she was treated well by Adduci and the detectives. *Ex. P (Soukup's Grand Jury Testimony), p. CCSAO_ 000438:16-24; CCSAO_000439:1-3.*

30. After memorializing Soukup's statement, Adduci returned to Area 3 and proceeded to memorialize the statements of Garner, Burns and Delong between the hours of 11:15 p.m. on July 22, 2001 and 1:00 a.m. on July 23, 2001. *Ex. R (Garner's Statement), Ex. S (Burns Statement), Ex. T (Delong's Statement).*

31. Adduci advised each of these witnesses that she was a prosecutor and not Plaintiff's attorney, and all three witnesses stated that they understood and agreed to give their statements. *Ex. R (Garner's Statement), Ex. S (Burns Statement), Ex. T (Delong Reed's Statement).*

32. According to Garner's statement and subsequent grand jury testimony, Burns came by the SRO building the day after Van Vo's body was found and told Garner that he was looking

for Plaintiff because he wanted to return the car keys Plaintiff gave him to a white vehicle that Plaintiff was trying to sell him. *Ex. R (Garner's Statement), Ex. I (Garner's Grand Jury Testimony) p. CCSAO_000413:10-24; CCSAO_000414:1-23.* When Garner heard the car was white, Garner told Burns that he thought the car was Van Vo's car and to be careful. *Ex. R (Garner's Statement), Ex. I (Garner's Grand Jury Testimony) p, CCSAO_000414:24; CCSAO_00415:1-6.*

33. Later that night, when Garner saw Burns in the third-floor hallway, Burns told Garner that Plaintiff went to the second floor to find the owner of the car so he could get the papers for Burns to buy the car. *Ex. R (Garner's Statement), Ex. I (Garner's Grand Jury Testimony), p. CCSAO_000415:19-24, CCSAO_000416:1-6.*

34. That same night, Garner saw Plaintiff leave his apartment with an object that was about four feet long and wrapped in a blanket. *Ex. R (Garner's Statement), Ex. I (Garner's Grand Jury Testimony) p. CCSAO_ 000416:19-24, CCSAO_000417:1-10.* About a half-hour later, Garner saw Plaintiff leaving his apartment with a bag and head downstairs. *Ex. R (Garner's Statement), Ex. I (Garner's Grand Jury Testimony), p. CCSAO_ 000417:18-24, CCSAO_000418:1-11*.

35. The statement ended with Garner stating that he was not threatened or promised anything in exchange for his statement, he was not under the influence of drugs or alcohol, was give coffee, a drink and allowed to use the washroom, was treated well by the police and Adduci, could read English and demonstrated that he could by reading out loud, read all four pages of his statement, had a chance to make corrections that he wanted, that Adduci read the statement out loud and the statement is true and accurate. *Ex. R (Garner's Statement).*

36. Garner later testified before the grand jury, under oath, that his statement was true and accurate, that no one threatened him or promised him anything in exchange for his statement and that he was treated well by Adduci and the detectives. *Ex I (Garner's Grand Jury Testimony) p. CCSAO_000418:12-24-CCSAO_000419:5-19.*

37. In summary, and not word for word, Burns stated that, on July 16, 2001, "Chuck" (who Burns later identified in a photo as Plaintiff) tried to sell Burns a white '91 Maxima car for $250.00 and when "Chuck" could not produce the "papers" for the car, Burns returned the keys to Plaintiff. *Ex. S (Burns's Statement), Ex. U (Burns's Grand Jury Testimony), p. CCSAO _000565:10-24 -CCSAO_000567:1-12.* Burns subsequently met with the detectives working the Van Vo homicide and told them everything about Plaintiff and the car. *Ex. S (Burns's Handwritten Statement).*

38. The statement ended with Burns stating that he was not threatened or promised anything in exchange for his statement, he was not under the influence of drugs or alcohol, was given soda to drink and allowed to use the washroom, was treated well by the police and Adduci, could read English and demonstrated that he could by reading out loud, read all eight pages of his statement, had a chance to make corrections that he wanted, that Adduci read the statement out loud and the statement is true and accurate. *Ex. S (Burns' Statement).*

39. Burns later testified before the grand jury, under oath, that his statement was true and accurate, that no one threatened him or promised him anything in exchange for his statement and that he was treated well by Adduci and the detectives. *Ex. U (Burns's Grand Jury Testimony), p. CCSAO_000577:19-24-CCSAO_000579:1-2; Ex. E (Burns' Deposition) p. 166:6-12; 16-20, 167:1-22*.

40. In summary, and not word for word, DeLong stated, that he last saw his neighbor and friend, Mr. Van Vo on July 12, 2001, that he and Van Vo shared a bathroom that Van Vo always kept open. DeLong went to see his grandma on July 13 and returned to his apartment in the evening of July 15 when he noticed that the bathroom door and front door to Van Vo's apartment was closed, which was unusual. When he knocked, there was no response. The next evening, DeLong saw Plaintiff in Van Vo's apartment with the door open a crack. Twenty seconds later DeLong saw

Plaintiff coming out of Van Vo's apartment with one of Van Vo's speakers. DeLong asked Plaintiff why he was in Van Vo's apartment; Plaintiff told him to go back to Plaintiff's apartment and that Van Vo was out of town. Late that night, Plaintiff got another speaker from Van Vo's apartment and brought it back to his apartment. The next day, De Long noticed a smell coming from Van Vo's apartment, asked Plaintiff if Van Vo was there when Plaintiff was in the apartment, and Plaintiff said no. On July 19, 2026, DeLong asked Social Services to check Van Vo's apartment, and after they did, someone told him that Van Vo had passed. A few days later, DeLong told the police everything he saw. *Ex. T (DeLong Reed's Statement).*

41. The statement ended with DeLong stating that he was not threatened or promised anything in exchange for his statement, he was not under the influence of drugs or alcohol but did take Haldol this month to be kept lucid, was gives soda to drink, McDonald's to eat and allowed to smoke cigarettes and to use the washroom, was treated well by the police and Adduci, could read English and demonstrated that he could by reading out loud, read all four pages of his statement, had a chance to make corrections that he wanted, that Adduci read the statement out loud and the statement is true and accurate. *Ex. T (DeLong Reed's Handwritten Statement).*

42. DeLong later testified before the grand jury, under oath, that his statement was true and accurate, that no one threatened him or promised him anything in exchange for his statement and that he was treated well by Adduci and the detectives. *Ex. F (Delong Reed's Grand Jury Testimony), p. CCSAO _000461:7-14; CCSAO 000462:1-11;*

43. Twenty-four years later, DeLong Reed had no recollection of speaking with an ASA after talking with the police. *Ex. H (DeLong Reed's 3/19/26 Deposition), p.26:19-22,28:5-8*. However, his recollection of events was better in 2005 when he testified before the grand jury than it is today. *Id.*

44. At approximately 2:00 a.m. on July 23, 2001, Adduci returned to Plaintiff's room and, in the presence of Detective Thompson, asked Plaintiff if he was ready and willing to memorialize his statement, Plaintiff told her that he wanted to do a handwritten statement and they moved to the conference room. *Ex. C (Adduci's Testimony at Motion to Suppress Hearing), p. BS REED 002399:5-11, BS REED 002400:21-24, BS REED 002401:1-7. Ex. L (Thompson's Testimony at Motion to Suppress Hearing), p. BS REED 002259:3-17, BS REED 002260:1-4.*

45. Adduci asked Detective Thompson to get Plaintiff something to drink and, while he was gone, she asked Plaintiff how he was treated by the police and Plaintiff said "fine.". *Ex. C (Adduci's Testimony at Motion to Suppress Hearing), p. BS REED 002401:14-24, BS REED 002402:1-8, Ex. L (Thompson's Testimony at Motion to Suppress Hearing), p. BS REED 002260:5-8.*

46. Adduci asked Plaintiff whether the police threatened or made any promises to him and Plaintiff said no. *Ex. C (Adduci's Testimony at Motion to Suppress Hearing)*, *p. BS REED 002402:9-13.* Their private conversation lasted about five minutes. *Ex. C (Adduci's Testimony at Motion to Suppress Hearing)*, *p. BS REED 02402:14-19; Ex. L (Thompson's Testimony at Motion to Suppress Hearing) p. BS REED 002260:9-11.*

47. Adduci observed Plaintiff eat and drink and Plaintiff told her that he was allowed to use the washroom. *Ex. C (Adduci's Testimony at Motion to Suppress Hearing), p. BS REED 002403:1-13.*

48. Adduci started to memorialize Plaintiff's statement on the felony review pre-printed form. *Ex. V (Plaintiff's Handwritten Statement)*, *Ex. C (Adduci's Testimony at Motion to Suppress Hearing)*, *p. BS REED 002403:20-24, BS REED 002404:1-4.*

49. When she got to the pre-printed Miranda warnings, Adduci asked Plaintiff to read it to himself and, if he understood and agreed to it, to sign it. *Ex. C (Adduci's Testimony at Motion to*

*Suppress Hearing), BS REED 002403:20-24, BS REED 002404:1-13*. Adduci watched Plaintiff sign on the line provided. *Id.*

50. Adduci then proceeded to write out the 7-page statement that summarized what Plaintiff told her. *Ex. C (Adduci's Testimony at Motion to Suppress Hearing), BS REED 002404:14-20.*

51. The opening paragraph states that, after being advised of his Miranda rights, Plaintiff confirmed that he understood each of those rights, stated that he understood Adduci was an ASA and not his lawyer, and agreed to give his statement. *Ex. V (Plaintiff's Handwritten Statement).*

52. In summary, and not word for word, Plaintiff told Adduci that he was a high school graduate and could read and write English. *Ex. C (Adduci's Testimony at Motion to Suppress Hearing), BS REED 002403:14-17, Ex. L (Thompson's Testimony at Motion to Suppress Hearing) BS REED 002422:10-12, Ex. V (Plaintiff's Handwritten Statement).*

53. According to his statement, Plaintiff entered Van Vo's apartment sometime in the middle of July, intending to trick him into paying cash for sex and then rob him. When Van Vo failed to present the cash and grabbed Plaintiff's T-shirt, they fell to the floor, Plaintiff saw a knife on the floor without a handle and stabbed Van Vo with it numerous times before he left the apartment. *Ex. V (Plaintiff's Handwritten Statement).*

54. Plaintiff denied being threatened or made any promises in return for his statement, denied being under the influence of alcohol or drugs, stated that he was given McDonalds, donuts, chips and soda, was allowed to use the washroom whenever he wanted and was treated well by the police and Adduci. *Ex. V (Plaintiff's Handwritten Statement), Ex. C (Adduci's Testimony at Motion to Suppress Hearing), BS REED 002402:2-8,20-24, BS REED 002403:1-13.*

55. Plaintiff never told Adduci that that he was diabetic or in need of medication, and nothing prompted her to ask if he had a medical condition because he never appeared to be in need

of medical treatment. *Ex. C (Adduci's Testimony at Motion to Suppress Hearing), BS REED 002414:24, BS REED 002415:1-12; BS REED 002408:8-11.*

56. During the entire time they were together, Plaintiff never told Adduci that he wanted to remain silent, never asked Adduci for a lawyer, never told her the police threatened him, lied to him or made promises to him in exchange for his statement, and never told her that he wasn't allowed to sleep, *Ex. C (Adduci's Testimony at Motion to Suppress Hearing), BS REED 002406:19-24 - BS REED 002408:1-7.*

57. After the entire statement was written, Adduci moved to the other side of the table to sit next to Plaintiff, asked him to read the first paragraph below the Miranda warning out loud so that she knew he could read; and he did so. *Ex. C (Adduci's Testimony at Motion to Suppress Hearing), BS REED 002404:20-24, BS REED 002405:1-9, Ex. L (Thompson's Testimony at Motion to Suppress Hearing) MTTS), BS REED 002261:6-8, 22-24 – BS REED 002263:1-8.*

58. After hearing him read aloud, Adduci was confident he could understand and read English. *Ex. C (Adduci's Testimony at Motion to Suppress Hearing), BS REED 0002406:9-18; BS REED 002423:5-13.*

59. Adduci read the rest of the statement out loud while Reed followed along. *Ex. C (Adduci's Testimony at Motion to Suppress Hearing), BS REED002404:21-24, BS REED 002405:1-16, Ex. L (Thompson's Testimony at Motion to Suppress Hearing) MTTS), BS REED 002283:10-124, BS REED 002384: 1-6.*

60. When she got to the last paragraph on page 7, Adduci realized that she forgot to state that Plaintiff declined doing a court reported statement, told Plaintiff she forgot, added it and she, Plaintiff, and the detective initialed the insertion. *Ex. C (Adduci's Testimony at Motion to Suppress Hearing), BS REED 002425:4-24, BS REED 002426:1-4, Ex. V (Plaintiff's Handwritten Statement), p.7.*

61. Adduci also corrected two words that she misspelled [“handle” and “killed”] after Plaintiff agreed to the change and initial the correction along with Detective Thompson and herself. *Ex. C (Adduci's Testimony at Motion to Suppress Hearing), BS REED 002404:21-24, BS REED 002405:1-2, Ex. L (Thompson's Testimony at Motion to Suppress Hearing), BS REED 002265:7-20.*

62. Plaintiff, Detective Thompson and ASA Adduci signed each page of the 7-page statement after all corrections were made. *Ex. C (Adduci's Testimony at Motion to Suppress Hearing), p. BS REED 002404:23-24, BS REED 002405:1-16; BS REED 002406:1-8; BS REED 002409:1-8.* It took 45 minutes to an hour to complete the handwritten statement. *Id. at p. BS REED 002426:5-11.* A polaroid picture of Plaintiff was taken, and all three initialed the photo. *Id. at p. BS REED 002408:12-24; Ex. V (Plaintiff's Handwritten Statement).*

63. Based on all the evidence, Adduci recommended to her supervisor that Plaintiff be charged with first degree murder. *Ex. D (Adduci's Deposition), p. 169:12-17.* Her supervisor approved the charges. *Id. at, p. 169:23-25,170:1-2.*

64. On October 20, 2005, the Honorable Judge Marjorie C. Laws denied Plaintiff's Motion to Suppress his July 23, 2001 statement. *Ex. W (Transcript of 10/20/05 Motion to Suppress Hearing), p. BS REED 002558-BS REED 002566.* Part of her reasoning was that there was not enough information to establish that Plaintiff was not able to read or understand Miranda. *Id. at p. BS REED 002563:9-14.*

65. By 2001, Plaintiff was living on his own, away from family, navigating public transportation on his own, passed the written driver's test, held several jobs, was volunteering at a nearby shelter, buying groceries on his own, and paying bills. He also helped his girlfriend's grandchildren with their homework. *Ex. J (Plaintiff's 4/1/25 Deposition), p. 9-14:1-9.*

66. On December 5, 2005, Plaintiff pled guilty to first degree murder and was sentenced to 27 years in prison. *Ex. A (Amended Complaint), ¶ 37.*

67. Plaintiff's conviction was vacated; however, on June 25, 2025, Plaintiff's petition for a certificate of innocence was denied. *Ex. A (Amended Complaint)* ¶ 42; *Ex. X (6/25/05 Order Denying Petition for COI)*.

Respectfully Submitted,

NANCY GALASSINI ADDUCI

/s/*Michele J. Braun*________

Kenneth M. Battle
Michele J. Braun
O'CONNOR & BATTLE, LLP
111 W Jackson, Blvd., Suite 1700
Chicago, IL 60604
312-786-4600
kbattle@hoblawfirm.com
mbraun@mokblaw.com

## CERTIFICATE OF SERVICE

I, Michele J. Braun, an attorney, certify that a copy of the attached instrument was served via electronic case filing on all parties of record, on this 24th day of August 2026.

/s/ Michele J. Braun

Kenneth M. Battle
Michele J. Braun
O'CONNOR & BATTLE, L.L.P.
20 N. Clark St., Suite 1600
Chicago, IL 60602
312-422-9400
kbattle@mokblaw.com
mbraun@mokblaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CARL REED,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD ZULEY, TIMOTHY THOMPSON, the CITY OF CHICAGO, NANCY GALASSINI ADDUCI, and COOK COUNTY,<br><br>Defendants. | Case No. 1:23-cv-17186<br><br>Judge John F. Kness<br><br>Magistrate Heather K. McShain |

**LIST OF EXHIBITS**

Ex. A: Plaintiff's Amended Complaint

Ex. B: Adduci's Answer to Amended Complaint

Ex. C: Adduci's Testimony at Motion to Suppress Hearing

Ex. D: Deposition of Nancy Galissini Adduci

Ex. E: Deposition of Ricardo Burns

Ex. F: DeLong Reed's Grand Jury Testimony

Ex. G: Deposition of DeLong Reed, taken 7/17/25

Ex. H: Deposition of DeLong Reed ,Taken 3/19/26

Ex. I: Lester Garner's Grand Jury Testimony

Ex. J: Deposition of Plaintiff, taken 4/1/25

Ex. K: Detective Zacharias's Testimony at Motion to Suppress Hearing

Ex. L: Detective Thompson's Testimony at Motion to Suppress Hearing

Ex. M: Detective Zuley's Testimony at Motion to Suppress Hearing

Ex. N: Deposition of Plaintiff, taken 4/15/25

Ex. O: Deposition of Detective Jin

Ex. P: Dorothy Soukup's Grand Jury Testimony

Ex. Q : Dorothy Soukup's Handwritten Statement

Ex. R: Lester Garner's Handwritten Statement

Ex. S: Ricardo Burn's Handwritten Statement

Ex. T: DeLong Reed's Handwritten Statement

Ex. U: Ricardo Burns's Grand Jury Testimony

Ex. V: Plaintiff's Handwritten Statement

Ex. W: Transcript of 10/20/05 Motion to Suppress Hearing

Ex. X: 6/25/25 Order, denying Plaintiff's Petition for Certificate of Innocence

Respectfully Submitted,

NANCY GALLASININ ADDUCI

/s/*Michele J. Braun*________

Kenneth M. Battle
Michele J. Braun
O'CONNOR & BATTLE, LLP
111 W Jackson, Blvd., Suite 1700
Chicago, IL 60604
312-786-4600
kbattle@mokblaw.com
mbraun@mokblaw.com