Independent Forensics
DNA TESTING & TECHNOLOGIES

500 WATERS EDGE, SUITE 210
LOMBARD, IL 60148
TEL (866) 434-2400
FAX (708) 978-5115
WWW.IFI-TEST.COM

January 18th, 2019

Lauren Myerscough-Mueller
Staff Attorney,
Illinois Innocence Project
University of Illinois Springfield
One University Plaza, MS PAC-451
Springfield, IL 62703

p (217) 206-6051
e lmyersc2@uis.edu

Re: IL v Carl Reed, Court Docket 01 CR 20237
Re: ISP Laboratory Case# C01-33030

## Documents Reviewed

Illinois State Police, Forensic Services, July 15, 2004

Electropherograms
- C01-33030 8A PP BDA
- C01-33030 8D PP BDA

Bode Cellmark Forensics, Forensic Case Report, March 2, 2018

Bode Cellmark Forensics, Supplemental Forensic Case Report, July 12, 2018

Electropherograms
- CCC1732-0259-E02a1.1
- CCC1732-0259-E02b1.1
- CCC1732-0259-E02c1.1
- CCC1732-0259-E03a1.1

CCC1732-0259-E03b1.1
CCC1731-0259-E09a1.1
CCC1731-0259-E09b1.1
CCC1732-0259-R04a1.1
CCC1732-0259-R05a1.3
CCC1732-0259-R05a1.2
CCC1732-0259-R05a1.1
CCC1731-0259-E08a1.1

## Case Review

The following items of evidence were tested using standard and widely used methods, protocols, kits and reagents. The electronic data, *i.e.*, the unedited electronic files from the capillary electrophoresis of the multiplex DNA-PCR-STR kits were used to generate new electropherograms and these used to (i) compare with the provided electropherograms and (ii) to analyze the electrophoresis data in a more sensitive, detailed and critical manner.

**E02a – hair from victim's right hand, hair 1. Agency Exhibit 8. Bode Cellmark Forensics analysis.**

A very low level, incomplete, partial DNA profile was observed from this sample. At most, ten STR (10) alleles can be identified at nine (9) loci, most well below the peak detection threshold used by most laboratories, *i.e.*, visible on the electropherograms but ignored by the analysis software (and hence not analyzed by Bode). These data can be accounted for in their entirety by the victim, though the amelogenin locus would have to be ignored as data from this locus does not provide support for identifying the contributor as male.

The data, minimal and low level exclude the presence of the defendant.

**E02b – hair from victim's right hand, hair 2. Agency Exhibit 8. Bode Cellmark Forensics analysis.**

A very low level, incomplete, partial DNA profile was observed from this sample. At most ten (10) alleles at eight (8) STR loci can be identified. The amelogenin locus is also partial as no peak representing the X chromosome is present on the electropherogram – the presence of a male contributor could be inferred from the

amelogenin peak at Y. Both the victim, reference standard R05 and the defendant, reference standard R04, are excluded as contributors.

Given the minimal data, little more can be deduced from this sample.

**E02c – hair from victim's right hand, hair 3. Agency Exhibit 8. Bode Cellmark Forensics analysis.**

A complete single source profile was observed from this sample. The victim, R05, Kim Van Vo, cannot be excluded as a contributor to this sample; his identity is not in dispute.

The defendant, R04, C. Reed is excluded as a contributor, his DNA is not present.

**E03a – engraved side of knife. Agency exhibit 1. Bode Cellmark Forensics analysis.**

A complete, single source DNA profile was obtained from this sample. No indication of a mixture is noted. Reference sample R05, Kim Van Vo cannot be excluded as a contributor. His identity is not in dispute.

The reference sample R04, Carl Reed, is excluded as a contributor. His DNA is not present.

The Bode March 2, 2018 erroneously describes this as a partial profile; in fact a complete, unambiguous DNA profile was obtained from this sample.

The electropherogram exhibits a distinct 'ski slope' effect (*i.e.*, a decrease in peak height from left to right, from smaller to larger amplicons) indicative of either DNA template size degradation or PCR inhibition. It should be noted that all electropherograms provided by Bode in this case exhibit this diagnostic 'ski slope', including the reference standards. Thus it is far more likely that PCR inhibition is the root cause of this observation. PCR inhibition will decrease DNA profile strength, decrease the ability to obtain full DNA profiles and decrease the amount of genetic identify information that can be derived from forensic DNA analysis.

Ubiquitous PCR inhibition in a forensic DNA lab is not a normal feature of good forensic DNA analysis and this problem should have been noted by the analyst and secondary technical review. The fact that Bode missed this (obvious) problem in this case indicates poor technique, poor quality DNA testing, less than adequate training of their analyst and even poorer casework oversight.

**E03b – non-engraved side of knife. Agency exhibit 1. Bode Cellmark Forensics analysis.**

A mixed DNA profile from two (2) contributors can be noted. The DNA profile data can be deconvoluted into a partial major contributor and a partial minor contributor.

The reference sample, R05, Kim Van Vo, cannot be excluded as a contributor to the major profile. DNA profile data are absent from Penta E, Penta D, TPOX and D22S1045 and partial data are obtained from D13S317 and D5S818. Nonetheless, the identify of victim is not in dispute.

The minor contributor is represented by additional alleles at D3S1358 (allele call 18), D1S1656 (allele 15.3), D2S441 (allele 14), vWA (allele 18) and D10S1248 (allele 15).

Bode's claim that the data from the minor contributor cannot be compared is in error as the partial DNA profile of the minor contributor can indeed by compared to the two reference standards: the reference sample R04, Carl Reed, is excluded as a contributor to E03b. The defendant is excluded by the findings at D3S1358, D1S1656, D10S1248 and vWA: his DNA is not present on this item of evidence.

This electropherogram exhibits a distinct and severe 'ski slope' effect (as defined above) indicative of either DNA size degradation or PCR inhibition. As this effect was observed on every DNA profile produced by Bode, the far more likely cause is PCR inhibition which should be of significant concern to Bode. This problem was apparently not noted by either the analyst or the two layers of review all forensic DNA reports undergo.

**E08a – swabs of blood from fish tank. Bode Cellmark Forensics analysis.**

Re-analysis from the provided electronic data of the capillary electrophoresis separation of the multiplex PCR reaction using DNA extracted from the provided swabs, E08a, demonstrates a single source, strongly PCR inhibited DNA profile that is fully compatible with the victim. The defendant, C. Reed, is excluded as a contributor.

Bode mis-interpreted a raised baseline at D8S1179 as an additional STR peak (Bode call at allele 12) and concluded the presence of a second contributor to this sample. This is in error; there is no convincing data to support a second contributor to this sample. The correct call at this locus is 14 with a clear stutter peak at allele call 13.

Even a cursory inspection of the electropherogram confirms a dramatic drop-off in peak heights from left to right (i.e., from smaller to larger amplicons). This 'ski slope' effect is diagnostic of either template size degradation or PCR inhibition. As essentially every single submitted sample that Bode ran in this case demonstrates this same 'ski slope' pattern it is far more likely that PCR inhibition is the root cause of the inability to obtain STR data from loci require larger amplicons for analysis. In laboratory speak, the

extraction and/or purification and/or DNA clean-up used by Bode was not appropriate, sufficient, properly done or one of the reagents used in the processing of the samples in this case is 'bad', i.e., the reagent inhibits the Taq enzyme in the multiplex PCR reaction.

Bode made no apparent effort to try and obtain more data from this sample, to confirm their supposed identification of a second contributor or attempt to overcome the significant PCR inhibition in this sample. Secondary review did not apparently catch the mis-called error, note the inhibition in this sample or request that more effort be performed to improve the data.

**E09a – white towel from victim's face, stained area. Bode Cellmark Forensics analysis.**

A complete single source DNA profile was obtained from this sample. The Bode report of July 12, 2018 is in error when it describes this sample as a mixture; the 'additional' peaks noted by Bode at D5S818 and D8S1179 are simply elevated stutter, a known (and ubiquitous artifact of all PCR derived STR amplicons). Stutter is a known and obligate artifact of fragment size DNA-STR analysis. Here these artifacts of the PCR amplification were incorrectly identified by the analyst as evidence of a second contributor to this sample. This sample is single source; the reference sample R05, Kim Van Vo cannot be excluded as a contributor. The defendant, R04, C. Reed is excluded as a contributor. His DNA is not present.

The issue of distinguishing between a minor contributor and elevated stutter can be confounding, and while there is no analytical method for distinguishing between an elevated stutter artifact and a minor contributor who happens to have allele call(s) at the stutter position of the major contributor, an appropriate examination of the electropherogram would have noted no other indication of a second contributor not at a stutter position.

While it is possible that the postulated second contributor by happenstance has alleles at the stutter position of the major contributor, the lack of any other supporting data for a second contributor makes is much more likely that Bode's claim of a second contributor is due to a less than sophisticated analysis of the DNA profile.

This sample, like every sample processed by Bode in this case, exhibited PCR inhibition which was not noted by the analyst or case reviewers.

**E09b – white towel from victim's face, unstained area. Bode Cellmark Forensics analysis.**

This is a mixed DNA profile from two contributors. The DNA profile can be deconvoluted into a major contributor and a minor contributor. The relevant Bode report, July 12, 2018, makes several errors in its analysis of this sample.

i) D3S1358: Bode notes allele calls 15, (16); even a cursory inspection of their own electropherogram readily identifies 15, (16,17) as being the correct and complete profile – in fact the minor allele peak at 17 is larger and more visible (even before re-analysis) than the Bode called 16 allele. Re-analysis using the supplied electronic data readily confirms a major 15 and a minor 16,17 at this locus. The correct call at this locus is 15, (16,17). This is a significant error that again calls into question Bode's technical review process.

ii) D16S639 Bode notes alleles (8), 10, 11, (12). Allele call 8 is noise and does not represent an amplified product and is not an allele. Re-analysis from the provided electronic data readily distinguishes the stutter peak at allele call 9, the major contributor at 10,11 and a minor contributor at allele call 12. The correct call at this locus is 10,11, (12)

iii) D5S818: Bode has again miscalled the DNA profile from an elevated stutter artifact peak as a minor contributor. The allele summary table notes calls 9, (12), 13 at this locus. Given the severe drop-off in peak heights with increasing amplicon size (the 'ski slope' effect noted earlier) and the complete absence of any second contributor in this dye set (*i.e.*, loci TH01, vWA, D2S11, D7S820) it is highly unlikely that the minor contributor would suddenly appear at this locus. The correct call at this locus is 9,13.

iv) D8S1179: Bode notes (10), 14 at this locus. In fact the called 10 allele is merely raised baseline and is not an authentic STR generated peak. The correct call at this locus is 14 (an acceptable analysis could be 14,14, or 14, -).

v) D19S433: Bode notes 14,(15). This is highly unlikely given the ~6 fold drop-off in major peak height in this dye set (>30,000 RFU to ~5,500 ) seen for the major contributor. The call at 15 merely due to noise + upstream stutter + elevated baseline. The analyst should have been highly suspicious of this call: the authentic minor contributor is at most 400-500 RFU (as seen at D8S1358 and D16S539) and a 5-6 fold drop in RFU would have left this peak at baseline, *i.e.*, undetectable. At the very least the analyst should have re-run this sample to reproduce the data and better (and more appropriately) attempted to use known methods to try and wring more data from the existing PCR amplification reaction. Examples of additional effort/methods to obtain more data would include using longer injection times or post-PCR processing to increase the observed CE signals from the minor contributor. Both methods were

readily available to the analyst. There is no indication from the provided documentation that any effort to enhance, increase or improve the DNA profiles was attempted, a less than appropriate effort by this laboratory.

vi) FGA: Bode called (19),20,22 at this locus apparently keeping their record of mis-identifying stutter as a minor contributor intact. This is the least likely call in the entire profile – the decrease in peak height is more than 10 fold at this locus and yet a claim that a minor contributor at a stutter position was made by the analyst.

The major profile from this sample can be readily identified, R04, Kim Van Vo cannot be excluded as the contributor to this sample, his identity is not in dispute.

The minor profile, though partial, can be compare to the reference standard R04, C. Reed who is excluded as a contributor by the findings at D3S1358 (using either the correct or incorrect allele calls at this locus) and D1S1656 – his DNA is not present.

It is not clear how the above listed errors, the less than experienced analysis, the apparent lack of any effort to improve the partial DNA profile data and the seeming indifference to systematic PCR inhibition were either ignored or went unrecognized. It appears that the obligatory secondary technical review was equally lackadaisical, essentially disinterested or blind. The numerous and significant analysis errors were either missed or ignored by the both the analyst and second reader (who appears to be equally technically deficient). Taken together the errors and lack of correct interpretation and follow up indicate a structural problem in analyst training, experience and supervision at Bode.

The poor quality forensic DNA work and analysis performed at Bode Cellmark demonstrates sloppy work habits, lack of attention to detail and inattentive technical and managerial oversight. Bode Cellmark's work illustrates the 'one and done' philosophy that is neither appropriate nor acceptable for forensic casework, but is all too often seen in laboratories that are focused on large outsourcing state contracts.

**Exhibit 8D1. One hair root from Exhibit 8D. ISP Chicago analysis.**

We will leave aside the totally discredited 'hair analysis' and 'hair comparison' comments in the ISP reports that attempt to specify the origin of the collected hairs – there is no scientific basis for such comments and they must be ignored in their entirety. ISP's continued efforts to request pulled hairs for comparison and similar requests are merely a fig-leaf to cover their decades of junk science work on hair evidence and has no place in forensic analysis that purports to use science-based methods for drawing conclusions.

ISP did try to obtain scientifically defensible DNA- based data by attempting to obtain DNA profiles from two hairs purportedly collected from the hand of the victim.

Exhibit 8A returned no DNA profile data. No data above background was observed and no conclusions of any kind can be deduced from this sample.

Exhibit 8D1, another hair, returned a partial DNA profile after several rounds of laboratory attempts. The provided documentation only records a single PCR reaction using ProfilerPlus but numerous electropherograms (*i.e.*, CE analysis) were recorded, some with increased injection times.

Given the volume of the recovered DNA solution, it is possible that multiple amplifications were performed, but the provided documentation has no such records. It is possible that the PCR reaction was re-prepped for CE analysis, an acceptable and reasonable next step given the very sparse data apparently obtained on the first CE analysis runs. The documentation for a re-prepping of the PCR reaction for CE analysis is limited to a single hand-written notation, but may help to explain the multiple CE runs and the many electropherograms in the provided documentation.

The partial DNA profile from Exhibit 8D1 has data from six (6) STR loci. The data are clearly incomplete and low level; an added complication is the peak imbalance observed at amelogenin, the seventh genetic system that returned data.

The victim, R05, is excluded as a contributor to sample 8D1, his DNA is not present.

The defendant, C. Reed, R04, is excluded as a contributor to this item of evidence; his DNA is not present.

It is not clear if this item, 8D1, is probative; hairs are widely shed and lost from all parts of the body and easily inadvertently transferred. It is perhaps possible that less the perfect 'clean technique' was used at the crime scene or that the victim accidentally brushed up against someone. The DNA profile data from this item are quite minimal and do not link to any other DNA profiles reported in the present case.

## Conclusions

Several items of evidence including a knife, hairs and a towel were tested by the Illinois State Police (original work completed 2004) and Bode Cellmark Forensics (post-conviction DNA testing completed 2018).

The defendant, C. Reed, represented by a reference standard R04 in the Bode Cellmark reports and Exhibit 9 in the ISP report, is excluded from all items of evidence where a

comparison can be performed. This includes items, hairs, E02a, E02b, and E02c; both sides of a knife, E03a, E03b; swabs from a fish tank E08; stained and unstained areas of a towel, E09a, E09b and the hair originally analyzed by ISP, Exhibit 8D1. Exhibit 8A returned no DNA profile and thus provides no information in regard to the case.

Bode Cellmark's analysis of their generated DNA profiles contained numerous errors including missed allele calls, incorrect allele calls, inaccurate interpretations of artifacts and a failure to recognize consistent PCR inhibition. These errors directly indicate failures in Bode's analyst training and technical oversight and review process.

There is no forensic DNA data linking the defendant to any tested item of evidence.

Karl A. Reich

Karl Reich, Ph.D.
Independent Forensics
Lombard IL